IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 24 C 8637 |
| | ) | No. 16 CR 570 |
| KEITH DAVIS, | ) | Judge Joan H. Lefkow |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Keith Davis[1] pleaded guilty to three counts of kidnapping in violation of 18 U.S.C. § 1201(a)(1).[2] He moves, under 28 U.S.C. § 2255(a) to vacate, set aside, or correct his sentence. The motions, case no. 16 CR 570 (R. 135) and case no. 24 C 8637 (CVR. 1, 2),[3] must be denied.

---

[1] Davis spells his first name as Kieth in some documents he submitted to the court, but he is registered with the Bureau of Prisons as Keith DeWitt Davis, Inmate No. 46841-424. *See* https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last viewed on Nov. 7, 2025).

[2] **§ 1201. Kidnapping**
(a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when—
    (1) the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense[.]

[3] Records on the criminal docket, 16 CR 570, are cited with "R." followed by the ECF docket number. Records from the civil docket, 24 C 8637, are cited with "CVR." followed by the ECF docket number. Records from the appellate docket, 21-2114, are cited as "App. R." followed by the ECF docket number.

I. **Background**

As relevant here, the use of an "instrumentality of interstate or foreign commerce" to "confine" a person violates 18 U.S.C. §1201(a)(1). As summarized by the government, (CVR. 7), Davis in his plea colloquy admitted the following facts:[4]

> **Count 1:** On or about June 27, 2016, Davis sent a text message to K.B. after he viewed an internet advertisement on Backpage.com for K.B.'s prostitution services. Davis acknowledged that Backpage.com was an interactive computer service and the internet was an instrumentality of interstate commerce. Davis called K.B. and they discussed the planned sexual services and payment, and Davis directed K.B. to meet him at a residence. After K.B. met Davis, Davis directed K.B. into an empty residence where Davis prevented K.B. from leaving by stepping in front of K.B. and punching her in the eye with a closed fist. He punched K.B. again, smacked K.B.'s cellular telephone and keys out of her hand, held a wrench in his hand, and told K.B. he had a gun. After punching and hitting K.B., Davis ordered her to perform oral sex on him then vaginally raped K.B. After K.B. ran and hid in a bathroom in an adjoining room, Davis entered the bathroom, ordered K.B. to stop screaming and to stay in the bathroom for "five minutes or I'll shoot your ass." He then took K.B.'s cellular phone and her identification and exited the house without paying K.B.

> **Count 2:** In or around late June or early July 2016, victim N.A. placed an internet advertisement on Craigslist.com for N.A.'s dancing services. Davis acknowledged that Craigslist.com is an interactive computer service and the internet was an instrumentality of interstate commerce. Davis responded to N.A.'s Craigslist advertisement and communicated with N.A. using a cellular telephone and on Craigslist's private messaging feature. On July 10, 2016, N.A. drove her vehicle to meet Davis. Davis walked up to N.A's car, held a gun to N.A.'s head through the rolled down window then punched N.A. in the face with a closed fist and dragged her to a vacant residence. Once inside, Davis ordered N.A. to perform oral sex on him twice, threatened N.A. that he would "blow her brains out", punched her, and vaginally raped her twice. N.A. repeatedly tried to escape. Davis took N.A.'s clothing and purse, including her cellular telephone, before he ran from the residence. N.A. suffered multiple wounds because of Davis's attack.

> **Count 3:** In or around July 2016, Davis contacted victim J.C. by phone and text message after viewing an internet advertisement on Backpage.com for J.C.'s prostitution services. Davis acknowledged that Backpage.com was an interactive computer service and the internet was an instrumentality of interstate commerce. On or about August 12, 2016, J.C. agreed to meet Davis. Davis directed J.C. to an unlit and empty garage before pulling down J.C.'s shorts and underwear and

---

[4] The transcript of the plea colloquy is at R. 74. The government's page citations are omitted from this summary.

placing a metal pipe against her head. Davis struck J.C. several times in the head and chest area before J.C. dropped to the floor. Davis then kicked, punched, bit and scratched J.C. repeatedly before J.C. was able to escape. Davis inflicted multiple injuries to J.C. including bites on her hand, shoulder and back, cuts to her knees and hands, and bruising on her face and arms.

As is readily apparent, Davis admitted each of the elements of the offense, and the court accepted the plea. On June 8, 2021, the court imposed concurrent sentences of 360 months of imprisonment on each count, to be followed by five years of supervised release. As agreed by the parties, the Sentencing Guidelines range was 360 months to life. Davis appealed with the assistance of appointed counsel, who raised one issue: the trial court erred in its imposition of supervised release. The court of appeals agreed and remanded the case for resentencing. On September 20, 2022, the district court imposed the same sentence, which Davis did not appeal.

## II.  Timeliness of the Motions[5]

Davis's sentence became final, for purposes of the one-year limit on filing under 28 U.S.C. § 2255(f)(1), when the time to appeal lapsed on October 4, 2022. On August 18, 2023, within the one-year limit, Davis filed a motion to vacate the sentence in his criminal case. (R.135.) Then, on September 17, 2024, Davis filed additional motions to vacate. (CVR. 1, 2.)

The government argues that the motions filed on September 17, 2024, are untimely and cannot "relate back" to August 18, 2023, because they raise different issues from the first filing. Davis asks that his untimeliness be excused. In a letter to the court dated October 27, 2024, Davis reported that he had been in transit at FCC Lewisburg since October 10, 2024 and was being denied access to the law library pending the transfer.

---

[5] Davis has filed three motions under § 2255: case no. 16 CV 570 (R. 135) filed August 18, 2023; and case no. 24 CV 8637 (CVR. 1, 2), both filed September 17, 2024. The government on October 23, 2024, filed a consolidated response in case no. 24 CV 8637 (CVR. 7).

A petitioner "is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Socha* v. *Boughton*, 763 F.3d 674, 683 (7th Cir. 2014) (citing *Holland* v. *Florida*, 560 U.S. 631, 649 (2010)). "The realm of equitable tolling is a highly fact-dependent area in which courts are expected to employ flexible standards on a case-by-case basis." *Id.* at 684 (citations and quotation marks omitted). But the petitioner must establish both of these points. *Tucker* v. *Kingston*, 538 F.3d 732, 734 (7th Cir. 2008) (citations omitted). Davis does not explain his inability to access the law library, or identify any other impediment to filing, between October 4, 2022 (the date the judgment became final) and October 4, 2023 (the last date for a timely § 2255 motion). A lockdown beginning after the filing deadline has lapsed is insufficient to establish an equitable tolling exception to § 2255(f)(1).

If, however, the claims in the untimely motions "relate back" to the original motion, they may be considered. Under Federal Rule of Civil Procedure 15(c)(1)(B), amendments to pleadings relate back to the date of the original pleading when the claim asserted in the amended pleading "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. Pro. 15(c)(1)(B). An amendment does not relate back, however, merely because it "relate[s] to the same trial, conviction, or sentence as a timely filed claim." *Mayle* v. *Felix*, 545 U.S. 644, 662 (2005). Issues that are separate in "time and type" from the original filing do not relate back. *Id.* at 657.

Davis has proceeded without counsel throughout, and many of his issues are not recognized by any legal doctrine.[6] Colorable claims in the first motion are ineffective assistance

---

[6] For example, in the first motion, Davis seems to object to a protective order placing limits on access to discovery, but he cites no impediment to his defense because of it. He complains that his victims were not minors, so he could not have been guilty of kidnapping because they "knew the risk" of meeting with him. But there is no "assumption of risk" defense to criminal conduct. He states that he would not

4

of appellate counsel in (1) failing to timely file motions and order transcripts; (2) irregularity in the appointment of his appellate counsel; and (3) failure to challenge the voluntariness of his guilty plea. The second and third petitions address ineffective assistance of appellate counsel for failing to raise trial counsel's failures (specifically, trial counsel's failure to interview victims, failure to present exculpatory DNA evidence and evidence of misidentification found in police and FBI reports, and failure to argue "in depth" the nature and circumstances of the offense at sentencing).

Because the first petition is directed at ineffectiveness of appellate counsel and the second is directed at appellate counsel's failure to assert ineffectiveness of trial counsel, the later filings do not relate back to the original petition. *See Beason* v. *Marske*, 926 F.3d 932, 938 (7th Cir. 2019) (quoting *Mayle* v. *Felix*, 545 U.S. 644, 650 (2005)) ("[A]n amended petition 'does not relate back (and thereby escape [the] one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.'") Therefore, the court will address only issues raised in the initial August 18, 2023 motion.

### III. Legal Standard

Relief under § 2255 "is reserved for extraordinary situations." *Hays* v. *United States*, 397 F.3d 564, 566 (7th Cir. 2005) (quoting *Prewitt* v. *United States*, 83 F.3d 812, 816 (7th Cir. 1996)). A district court must grant a § 2255 motion when the petitioner establishes "that the district court sentenced him in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to

---

have stated to the court during his plea colloquy that his lawyer, Steven Saltzman, was "doing good" if he had known that Mr. Saltzman would fail to file transcripts on time. The incident about filing occurred at the initiation of Davis's appeal. Any delay in filing transcripts has no relevance to Mr. Saltzman's effectiveness as trial counsel.

collateral attack." *Hays*, 397 F.3d at 566–67 (quoting *Prewitt*, 83 F.3d at 816). It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

In order to establish constitutionally ineffective assistance of counsel, the petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* v. *Washington*, 466 U.S. 668, 688, 694 (1984). To satisfy the performance prong of the *Strickland* test, the petitioner must direct the court to specific acts or omissions of his counsel. *See United States* v. *Trevino*, 60 F.3d 333, 338 (7th Cir. 1995) (citation omitted). The court must then consider whether, in light of all the circumstances, counsel's performance was outside the range of professionally competent assistance. *Id.* There is a strong presumption that counsel's performance was effective, *id.*, and the court must not let hindsight interfere with its review of counsel's decisions. *See Harris* v. *Reed*, 894 F.2d 871, 877 (7th Cir. 1990) (citing *Strickland*, 466 U.S. at 697). Under the prejudice prong, to establish the reasonable probability that the outcome would have been different, the petitioner must show "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A court need not address both prongs of the *Strickland* test if one provides the answer; that is, if a court determines that the alleged deficiency did not prejudice the defendant, the court need not consider the first prong. *See United States* v. *Fudge*, 325 F.3d 910, 924 (7th Cir. 2003) (citing *Matheney* v. *Anderson*, 253 F.3d 1025, 1042 (7th Cir. 2001)).

### A. Claim One

Davis contends that his appellate counsel was ineffective because the attorney who initially represented him on appeal was ordered to file transcripts but did not do so until the last

day the court allowed.[7] Davis does not explain any prejudice; indeed, there can be no prejudice when counsel complied with the court's orders.

Davis also believes that appointed appellate counsel, Thomas W. Patton, Chief Federal Defender of the Central District of Illinois, should have represented him on appeal or moved to withdraw.[8] He contends, therefore, that Assistant Federal Defender Daniel J. Hillis should not have represented him. Again, Davis cites no failure by Mr. Hillis that would have been avoided had Mr. Patton represented him. In any event, although Davis had a right to appointed counsel on appeal, *see Douglas* v. *People of State of Cal.*, 372 U.S. 353, 356 (1963), he did not have the right to choose a particular attorney to represent him.

**B. Claim Two**

Davis next claims that the court lacked jurisdiction. Davis's explanation is meandering but seems to resolve to a claim that, because the charged crimes were committed within the State of Illinois, he should have been tried in Illinois courts. In legal terms, he might claim that the Federal Kidnapping Act is unconstitutionally based on the Commerce Clause. But Davis raised this question before the district court, which rejected the argument, concluding that the Act has been universally held to be constitutional. *See United States* v. *Davis*, No. 16 CR 570, 2019 WL 447249, at *2–3 (N.D. Ill. Feb. 5, 2019) (quoting *Cleveland* v. *United States*, 329 U.S. 14, 19 (1946)) (collecting cases) ("The Federal Kidnapping Act is a valid exercise of Congress's

---

[7] The record on appeal, Case No. 21-2114, reflects that Mr. Saltzman, on the day after the appeal was docketed, June 17, 2021, moved to withdraw. Before addressing the motion, the court directed Mr. Saltzman to comply with Federal Rule of Appellate Procedure 10(b) by June 28. Counsel made a Rule 10(b) filing on June 22 but failed to include the transcript of Davis's plea hearing. Thus, on June 25, the court ordered counsel to show cause by June 30 why he did not file the transcript. On June 30, counsel filed the required Transcript Information Sheet.

[8] Mr. Patton never filed an appearance in the case. As the director of the Federal Defender Office, he presumably had authority to delegate the assignment to an assistant federal defender.

7

authority, since … '[t]he power of Congress over the instrumentalities of interstate commerce is plenary.'"). This court has found no reported case to the contrary. Because Davis admitted to using "instrumentalities of interstate commerce" (the internet and telephones) to facilitate the crimes, the federal court had jurisdiction.

C. Claim Three

Davis claims that appellate counsel was ineffective because he failed to raise the voluntariness of his guilty plea on appeal. He states that a plea is invalid where the court "fail[s] to ascertain whether the petitioner understood the nature of the charge[s] he was facing and … failed to inquire as to whether counsel explained the charges to the defendant at the time the plea was taken." (R. 135 at 7.) The transcript of the plea colloquy confirms that these rules were followed. Davis, under oath, represented that he is a high school graduate, and that, although he was under the care of a psychiatric intern and was taking an antidepressant, he felt okay, and his memory and thinking ability were not impaired. His counsel, who had been representing Davis for approximately a year, had no concerns about his client's competency. Davis admitted that his attorney had explained the nature of the charges to him and the possible consequences of a guilty plea. He stated that he was satisfied with the representation that counsel had provided him. He admitted all facts set out on the record comprising the elements of the three charges to which he would plead guilty. Davis agreed that pleading guilty was his "own free, voluntary act." (R. 128 at 32.)

Based on this record, Davis cannot plausibly contend that his plea was not voluntary. *See Blackledge* v. *Allison*, 431 U.S. 63, 73–74 (U.S. 1977) (citations omitted) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in

the face of the record are wholly incredible."). Davis does not make any specific statements about why he believes his plea was involuntary, and the record does not suggest any basis for it.

At the end of Davis's motion, he asks the court to give him the benefit of the doubt, to reduce his sentence, and to take into consideration his long-standing poor mental health. The court acknowledges that a 30-year sentence is very long, but the trial judge chose to sentence Davis at the low end of the guidelines range for very serious violent crimes. Unfortunately for Davis, his motion presents no lawful avenue to address his requests. He has failed to meet the *Strickland* requirements to show (1) that counsel's representation fell below an objective standard of reasonableness and (2) a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

## ORDER

The motions of Keith Davis under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, case no. 16 CR 570 (R. 135) and case no. 24 C 8637 (CVR. 1, 2), are denied. The case is terminated.

Date: November 10, 2025

_____
U.S. District Judge

9